UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKHTAR QASSIMYAR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION (FBI); STACEY MOY; DOES 1 THROUGH 500,<br><br>Defendant. | Case No.: 3:24-cv-02109-RBM-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**<br><br>**(2) DISMISSING COMPLAINT ON SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii)**<br><br>**[Doc. 2]** |

On November 12, 2024, Plaintiff Akhtar Qassimyar ("Plaintiff") filed a Complaint against the Federal Bureau of Investigation ("FBI"), Stacy Moy, and Does 1 through 500 (collectively "Defendants"). (*See* Doc. 1 ("Compl.").) That same day, Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* ("IFP") (the "IFP Motion"). (Doc. 2.)

For the reasons discussed below, Plaintiff's IFP Motion (Doc. 2) is **GRANTED**, and Plaintiff's Complaint (Doc. 1) is **DISMISSED** without leave to amend.

## I.   BACKGROUND[1]

Plaintiff filed this case against Defendants for violation of his First Amendment rights because they "revenged and retaliated against the Plaintiff including but not limited to firing the Plaintiff from his job within 24 hours, warning the Plaintiff of risk and severe consequences, blacklisting the Plaintiff and depriving him from all rights necessary for life including working and housing, threats, harassments, assassination attempts, physical attacks, torturing, and sleep deprivation against the Plaintiff for years until the present time[.]" (Compl. at 7.)[2]

Plaintiff alleges this retaliation began to take place after he started a television show called "The Caravan of Truth" (*see id.* at 6) and published a book titled "The Truth of Terrorism: Why the Anglo-American Great Game of Terrorism is Failing in Afghanistan and the True Path to Global Peace," where he "expose[d] the ultimate facts and tell the truths regarding the US pre-planned conspiracy of the occupation of Afghanistan, and the US government's war on terrorism which was in fact, bloody colonial wars for exploitation against the innocent people of the mineral-rich Afghanistan, oil-rich Iraq, oil-rich Libya and other countries which eventually failed at the expense of America and the world." (*Id.* at 6.)  Plaintiff alleges that a few weeks after his television show aired, the owner of the broadcasting studio, Payam-e-Afghan TV, informed him that two FBI agents came to the studio in Los Angeles and stated that "there would be risk and severe consequences for the Plaintiff, if he continued his TV program." (*Id.* at 7.)  After Plaintiff received this warning, Plaintiff alleges that he "was blacklisted and was deprived of all necessary rights for living including the rights of working and housing." (*Id.* 8.)

---

[1] The following is a summary of Plaintiff's Complaint that does not reflect the legal or factual opinions of the Court.

[2] The Court cites the CM/ECF electronic pagination unless otherwise noted.

  Plaintiff explains he lived is his car for many years because he was "unable to find a home for rent due to the US government's spy agency's persecution and revenge for free speech and telling the truth." (*Id*.) Plaintiff states that he applied for multiple jobs, but his applications were consistently rejected. (*Id*.) On one occasion, Plaintiff alleges that he was accepted for a position in the Language Institute in Monterey, California but needed to undergo an FBI background check. (*Id*.) Plaintiff explains that during his appointment, two FBI agents subjected him to a nine-hour interview over two days, where they told Plaintiff they "knew [him] very well and they would not give [him] the job …, because of [the] TV show." (*Id*.) Plaintiff alleges the FBI agents then "offered the background check and the job in exchange for him to stop his TV show," which Plaintiff refused. (*Id*.)

  Further, Plaintiff claims to have "received many threatening phone calls, messages and witnessed numerous threats, harassments, from the US spy agents and their informants including street gangsters, addicted, homeless and psychopaths who were obviously affiliated with the FBI spy agency in San Diego to deter me (Plaintiff) from my constitutional right of free speech." (*Id*. at 9.) Plaintiff alleges that he "survived three apparent assassination attempts" as a result of exercising his right of free speech. (*Id*.)

  Plaintiff claims to "have been tortured by sleep deprivation for years until the present day." (*Id*. at 10.) While Plaintiff lived in his car, Plaintiff alleges that "the US spy agencies were disturbing [him] by honking, running cars, motorcycles and by remote technology at night to disturb and deprive the Plaintiffs sleep." (*Id*.) He explains that his car "has been under surveillance, so everywhere the Plaintiff used to park his car, the spy agencies knew Plaintiff's locations at night and the spy agents or their affiliated informants were persecuting the Plaintiff to disturb and deprive him of sleep." (*Id*.) At his current residence in a senior apartment, Plaintiff alleges that "US government's spy agencies wake [him] up 2–3 times a night by radar and remote torturing devices even at the present time when I am living in a senior apartment." (*Id*.) Plaintiff claims to know "many Afghan Americans who were warlord-affiliated, ISIS-affiliated, narcotic-gang-affiliated and were murderers

in Afghanistan with terrible criminal and immoral pasts but who now work for the CIA and FBI spy agencies in the USA." (*Id.*)

Plaintiff asserts that he has been physically attacked by "U.S. spy agents" in San Diego, as well as outside of the country. (*Id.* 11–14.) While in San Diego, Plaintiff alleges that "a US spy agent physically attacked the Plaintiff's car when the Plaintiff was inside his car." (*Id.* at 11.) Plaintiff also alleges that he "was struck by a large official white SUV" while visiting Thailand. (*Id.* at 13.) Finally, Plaintiff alleges that "[D]efendants have full control of the Plaintiffs privacy to see, read and hear [his] personal emails, phone conversations, and text messages." (*Id.* at 14.) Plaintiff brings a single cause of action for violation of his First Amendment right to free speech, seeking declaratory judgment, injunctive relief, and other relief "according to proof at trial." (*Id.* at 17.)

## II.    LEGAL STANDARD

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for a writ of habeas corpus, must pay a filing fee of $405.[3] 28 U.S.C. § 1914(a).  A court may authorize the commencement of a suit without prepayment of the filing fee if the plaintiff submits an affidavit, including a statement of all his or her assets, showing he or she is unable to pay the fee because of indigency. *See* 28 U.S.C. § 1915(a).  An applicant must provide the Court with a signed affidavit "that includes a statement of all assets[,] which shows inability to pay initial fees or give security." S.D. Cal. Civ. R. 3.2(a).  The facts of an affidavit of poverty must be stated with "with some particularity, definiteness, and certainty." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (quoting *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)).  The determination of indigency falls within the district court's discretion. *California Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *rev'd on other*

---

[3] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).

*grounds*, 506 U.S. 194 (1993) ("Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency.").

### III.   DISCUSSION

#### A.   Plaintiff's IFP Application

It is well-settled that a party need not be completely destitute to proceed IFP. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). To satisfy the requirements of 28 U.S.C. § 1915(a), "[a]n affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Adkins*, 335 U.S. 331 at 339; *see also Escobedo*, 787 F.3d at 1234. No exact formula is "set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP status." *Escobedo*, 787 F.3d at 1235. Consequently, courts must evaluate IFP requests on a case-by-case basis. *See id.* at 1235–36 (declining to implement a general benchmark of "twenty percent of monthly household income"); *see also Cal. Men's Colony*, 939 F.2d at 858 (requiring that district courts evaluate indigency based upon available facts and by exercise of their "sound discretion"), *rev'd on other grounds*, 506 U.S. 194 (1993); *Venable v. Meyers*, 500 F.2d 1215, 1216 (9th Cir. 1974) ("The granting or denial of leave to proceed [IFP] in civil cases is within the sound discretion of the district court.").

In his IFP Motion, Plaintiff lists $735.00 as his monthly income from disability benefits in the past 12 months. (Doc. 2 at 1.) Plaintiff has $0 in cash and $1,400.00 in a checking account with Chase Bank. (Doc. 2 at 2.) Moreover, Plaintiff owns a vehicle worth $1,400.00. (*Id.* at 3.) Plaintiff spends $1,090.00 per month on rent, $30.00 per month on utilities, $300.00 per month on food, $50.00 on clothing, $35.00 per month on laundry and dry cleaning, and $150.00 per month on transportation. (*Id.* at 4.) Plaintiff is not owed any money and does not have any dependents who rely on him for financial support. (*Id.* at 3.) Plaintiff does not anticipate any changes to his income or expenses in the next twelve months. (*Id.* at 5.)

The Court determines Plaintiff's monthly income is $735.00 and monthly expenses are $1,655.00. Considering the information in his application, the Court finds that Plaintiff has sufficiently shown an inability to pay the $405 filing fee pursuant to § 1915(a). Thus, Plaintiff's IFP Motion is **GRANTED**.

### B.     Screening Under 28 U.S.C. § 1915(e)

"Even were the Court to grant Plaintiff's IFP Motion, Plaintiff's complaint warrants dismissal pursuant to 28 U.S.C. § 1915(e)(2)'s required pre-answer screening." *Toussaint v. Venante*, No. 22-cv-245 JLS (AGH), 2022 WL 891112, at *2 (S.D. Cal. Mar. 25, 2022). As discussed above, every complaint filed pursuant to the IFP provisions of 28 U.S.C. § 1915 is subject to mandatory screening by the Court under § 1915(e)(2)(B). *Lopez*, 203 F.3d at 1127. Under this provision, the Court must dismiss complaints that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

#### 1.     Frivolity

"The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted). "A complaint ... is frivolous where it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). The definition of frivolousness "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

When determining whether to dismiss a complaint as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), the court has "the unusual power to pierce the veil of the complaint's factual allegations," meaning that the court "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32. Frivolous claims include "claims

describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.*  "An in forma pauperis complaint may not be dismissed ... simply because the court finds the plaintiff's allegations unlikely." *Id.* at 33.  But "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.*  Frivolous litigation "is not limited to cases in which a legal claim is entirely without merit .... [A] person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060–61 (9th Cir. 2007).

The Complaint is replete with fanciful ideations that are fantastical, delusional, irrational, and incredible concerning individuals and entities attempting to assassinate him and torturing him by depriving him of sleep through radar and remote devices. (*See* Compl. at 9, 10–11, 16.)  "No matter how sincerely believed by Plaintiff, these allegations are simply too fantastic to warrant the expenditure of further judicial and private resources." *Meyer v. World Bank*, No. 3:19-cv-00017-GPC (JLB), 2019 WL 2009873, at *3 (S.D. Cal. May 7, 2019) (citation omitted); *see Athans v. Starbucks Coffee Co.*, No. CV-06-1841-PHX-DGC, 2007 WL 1673883, at *2 (D. Ariz. June 11, 2007) (dismissing as frivolous pro se litigant's complaint alleging a conspiracy of "illegal surveillance, undercover 'sting' operations, and [the] unlawful 'doping' of [Starbucks] beverages.").  Thus, the Court finds that Plaintiff's Complaint (Doc. 1) is frivolous.

### 2.     Federal Rule of Civil Procedure 12(b)(6)

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The Court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to

construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).  However, the Court may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

From the Court's review of the Complaint, it does not appear Plaintiff presents any legal claim for relief, let alone one that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Plaintiff does not articulate a claim under federal or state law, but rather, as expressed above, expresses fanciful ideations concerning the FBI targeting him for harassment and conspiring with various entities because he refused to stop hosting a television show which comments on conspiracies involving the U.S. government.  Thus, the Court finds Plaintiff fails to state a claim upon which relief can be granted.

Additionally, "Plaintiff's allegations are fanciful and delusional and 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Sandoval v. Castillo*, No. 08-cv-1622-WQH-NLS, 2008 WL 4790521, at *1 (S.D. Cal. Nov. 3, 2008) (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984)).  Therefore, even if the Court were to grant Plaintiff's IFP Motion, Plaintiff's Complaint (Doc. 1) must be **DISMISSED** without leave to amend.

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's IFP Motion (Doc. 2) and **DISMISSES** Plaintiff's Complaint (Doc. 1) without leave to amend.  The Clerk shall close the case.

**IT IS SO ORDERED**.

DATE:  November 27, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE